UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Martin Kelledy,<br>Individually and on Behalf of All<br>Other Persons Similarly Situated,<br><br>   Plaintiff,<br><br>v.<br><br>Dunkin' Brands, Inc. *and*<br>Dunkin' Brand Group Inc.,<br><br>   Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**CLASS ACTION COMPLAINT**

Plaintiff Martin Kelledy alleges on behalf of himself, and all others similarly situated, the following facts, upon personal knowledge as to himself and his own acts, and upon information and belief, as well as investigation of his counsel, as to all other matters.

## I. NATURE OF THE ACTION

1. This is a class action against Dunkin' Brands, Inc. and Dunkin' Brand Group Inc. (hereinafter, collectively, "Dunkin'") for damages under the Massachusetts Consumer Protection Act, M.G.L. c. 93A, and Massachusetts common law, on behalf of consumers who were systematically overcharged for purchases made through Dunkin's operation of the Dunkin' Mobile Application (an online system for Dunkin' store purchases) at certain Dunkin' store locations (the "Affected Stores").

2. As a result of Dunkin' Brands, Inc. and Dunkin' Brand Group Inc.'s organization and operation of the Mobile Application system, the total charged to a customer, as calculated by the

Mobile Application, systematically exceeded the displayed prices for individual items when specific purchases were made at the Affected Stores.  *See* Exhibits ("Exh.") 1 – 7.

3.      Because of this, many thousands of Dunkin' consumers have been unfairly and deceptively overcharged through their use of the Mobile Application for purchases made at many hundreds of Dunkin' locations throughout the United States.

4.      As Dunkin' has designated the laws of Massachusetts to govern use of the Mobile Application, Plaintiff, individually and on behalf of all others similarly situated, seeks statutory damages, compensatory damages, and injunctive relief under the Massachusetts Consumer Protection Act, M.G.L. c. 93A, for a national class of affected customers or, in the alternative, for a class of affected customers having made purchases in Massachusetts.

## II.     THE PARTIES

5.      Plaintiff Martin Kelledy is a Massachusetts resident who lives in Dorchester, Massachusetts.

6.      Defendant Dunkin' Brands, Inc is a corporation organized under the laws of Delaware, with a principal place of business located at 130 Royall Street, Canton, Massachusetts.

7.      Defendant Dunkin' Brand Group Inc. is a corporation organized under the laws of Delaware, with a principal place of business located at 130 Royall Street, Canton, Massachusetts.

## III.    JURISDICTION AND VENUE

8.      Plaintiff has accepted, and all Mobile Application users must accept, "Terms of Use" governing use of the Mobile Application. Exh. 8 (hereinafter, "Terms"). Those Terms require parties to arbitrate disputes through the American Arbitration Association.  Exh. 8 at pp. 17-18. The American Arbitration Association, however, has determined the arbitration provision materially deviates from an acceptable provision; has declined to arbitrate this matter; and has

referred the Plaintiff Kelledy and Dunkin' to the appropriate court.  (*See* Exhs. 10, 11, and 12; Complaint at §IV.G, ¶¶ 67–72, *infra*.)  This Court is appropriate.

9. The Court has diversity jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §1332(d).  This is a class action brought on behalf of more than 100 class members; the claims of the Plaintiff and Class(es) exceed $5 million; and there is minimal diversity between the Class Members and Dunkin' because there are members of the Classes who are citizens of states of which the Defendants are not citizens.

10. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the conduct complained of herein occurred in this District.

11. Venue is also proper as the Terms mandate that, where the arbitration provision is not applied, the Parties "will be subject to the jurisdiction and venue of the state and federal courts located in Boston, Massachusetts[.]" *See* Exh. 8 at pp. 19-20.

   IV.   **FACTUAL ALLEGATIONS**

12. The actions to be litigated concern the Terms of the Dunkin' Mobile Application, as well as certain purchases of Dunkin' products, by Mr. Kelledy and other customers nationwide, through the Dunkin' Mobile Application which systematically result in undisclosed charges.

   A.   **Dunkin's Mobile Application – Terms of Use**

13. Dunkin' allows any consumer to download an application for use on, *inter alia*, his or her cellphone.

14. Prior to using the application, the Mobile Application displays the first four paragraphs of a document entitled "Dunkin' Donuts Online Services Terms of Use," with a choice to "Accept" or "Decline."  Customers must click "Accept" to use the Application.

15. The Terms state, under a section entitled "Governing Law," that "These Terms and any disputes arising under or related to these Terms (whether for breach of contract, tortious conduct or otherwise) will be governed by the laws of the Commonwealth of Massachusetts, without reference to its conflicts of law principles." Exh. 8 at p. 17.

### B. Dunkin' Mobile Application – Function

16. After a customer has agreed to the Dunkin' Mobile Application Terms, the application allows customers to make online purchases of Dunkin' products at participating Dunkin' locations.

17. When purchasing products through the Mobile Application, a customer such as Mr. Kelledy is provided a selection of available stores, a menu of items, and the price of those items at that store.

18. Customers then select the store from which they wish to order and the items they wish to purchase.

19. Customers may modify certain items through a series of drop-down menus which offer specific flavors, sweeteners, add-ons, and other modifications for certain products.

20. Customer then pay for the purchase electronically, are assigned an order number for the purchase, and thereafter may pick up the order at the location from which they ordered the items.

### C. Mr. Kelledy's Purchases Through the Dunkin' Mobile Application

21. Mr. Kelledy is, and has been, a regular customer of numerous Dunkin' stores for many years.

22. Mr. Kelledy has purchased items from Dunkin' stores in at least Massachusetts, Rhode Island, New York, New Hampshire, Maine, and Connecticut.

23. Mr. Kelledy has regularly made purchases from Dunkin' stores via the Mobile Application.

24. Mr. Kelledy continues to use the Dunkin' Mobile Application today.

25. Should Mr. Kelledy cease using the Dunkin' Mobile Application, Mr. Kelledy will, *inter alia*, be unable to make Dunkin' purchases in certain circumstances, be inconvenienced, and be unable or less likely to earn Dunkin' rewards for the discounted purchase of additional items at Dunkin'.

### D. The Dunkin' Mobile Application "Unfairly and Deceptively" Charges For Add-Ons

26. In mid-2022, Mr. Kelledy noticed that the Mobile Application was appending an undisclosed charge to certain of his Dunkin' purchases made on the Mobile Application.

27. This undisclosed charge (the "Undisclosed Charge") was nowhere itemized or disclosed.

28. Mr. Kelledy is unaware of how many times he has paid these Undisclosed Charges.

29. The two Undisclosed Charges which Mr. Kelledy noted occurred when Mr. Kelledy ordered a bagel with a modification – the selection of a plain cream cheese Add-On for the bagel.

30. By way of example, and as illustrated in Exhibit 1, on April 23, 2022, Mr. Kelledy purchased a Large Original Blend Iced Coffee for $3.69 and an Everything Bagel (with Plain Cream Cheese) for $3.09.

31. While the Mobile Application should have calculated a Sub-Total (*i.e.*, a full charge, prior to tax) of $6.78, instead the Mobile Application calculated a Sub-Total of $8.03.

32. Tax was then additionally calculated on top of that incorrect Sub-Total, meaning that Mr. Kelledy not only paid an overcharge of $1.25, but also paid tax on the $1.25 overcharge.

33. The imposition of this Undisclosed Charge has resulted in Mr. Kelledy paying an unknown extra amount of money, through the Dunkin' Mobile Application, to an unknown number of Dunkin' stores, on an unknown number of occasions.

34.     Upon information and belief, Dunkin' profits from these purchases through, *inter alia*, royalties and an increase in the value of the Dunkin' brand, even if payments are rendered directly to franchisees.

### E.  Dunkin's Mobile Application Routinely Fails to Disclose Add-On Charges

*Example #1*

35.     Mr. Kelledy's April 23, 2022 purchase of a bagel with cream cheese serves as Example #1. *See* Exh. 1. When Mr. Kelledy added cream cheese to his bagel, he could not anticipate he would incur not only a $1.10 charge (individually increasing the bagel price from $1.99 to $3.09) but also an additional Undisclosed Charge (increasing the overall Sub-Total by another $1.25).

36.     This Undisclosed Charge, however, was not limited to purchases made by Mr. Kelledy or purchases made at a singular Dunkin' store location.

37.     Instead, the Undisclosed Charge was systematically included in all consumers' purchases of such bagels with plain cream cheese, when those items were purchased through the Mobile Application in, upon information and belief, hundreds of Dunkin' stores throughout the United States. *See* Exh. 2 (showing an identical Undisclosed Charge made at a different Dunkin' location in January 2023 when counsel verified the charges were continuing).

38.     Though not all Dunkin' stores nationwide included Undisclosed Charges in their Sub-Totals, when a Dunkin' store rendered an Undisclosed Charge for one customer through the Mobile Application, that same store would consistently render an Undisclosed Charge for all other customers making similar purchases.

39.     The Dunkin' Mobile Application should not render, or allow franchisee operators or individual stores to render, charges that are not itemized, such as the $1.25 Undisclosed Charge. Such charges should not simply be inserted, without notice, into the Sub-Total Charge, and the

Mobile Application's imposition or inclusion of such a charge is a violation of Massachusetts law to which Dunkin' bound Mr. Kelledy in the Terms for use of the Mobile Application. M.G.L. c. 93A; *see also, e.g.,* 940 CMR 3.04 (Deceptive Pricing); 940 CMR 3.13(1) (Pricing) and 940 CMR 3.13(1)(f) (Correct Pricing); 940 CMR 3.13(2) (Deceptive Pricing).

*Example #2*

40. The Mobile Application's charges for "butter" and "butter substitute" at Affected Stores serve as Example #2. (Exh. 3 shows a routine transaction including butter; Exh. 4 shows a routine transaction including butter substitute.)

41. If Mr. Kelledy attempts to purchase a bagel with butter or butter substitute on the Mobile Application at an Affected Store, the Mobile Application displays an "Update" button at the bottom of the screen with a price ($1.99, in the case of Exhs. 3 and 4) that includes no extra charge for the butter or butter substitute.

42. After updating the order, the Mobile Application then displays a note that butter or butter substitute has been included, but nowhere indicates any charge specific to those Add-Ons. The displayed bagel prices remain the same.

43. Instead, without notice, the Mobile Application incorporates an additional Undisclosed Charge – in this case $0.25 – into the Sub-Total for the Add-On. *See, e.g.*, Exhs. 3 and 4 (display of charges rendered by Mobile Application during investigation of counsel).

44. This failure to update the item pricing is compounded by the fact that prices of Add-Ons vary between Dunkin' restaurants, and some Dunkin' restaurants do not charge for butter or butter substitute. *See* Exh. 5 (displaying a Mobile Application purchase where there is no charge for the Add-On).

45. Without price charges specifically linked to the item in the Mobile Application, customers cannot know that they will be charged for those Add-Ons or what they will actually be charged for an item.

46. The Mobile Application's imposition or inclusion of such charges is a violation of Massachusetts law to which Dunkin' bound Mr. Kelledy, and all other Mobile Application users, in the Terms for use of the Mobile Application.  M.G.L. c. 93A; *see also, e.g.,* 940 CMR 3.04 (Deceptive Pricing); 940 CMR 3.13(1) (Pricing) and 940 CMR 3.13(1)(f) (Correct Pricing); 940 CMR 3.13(2) (Deceptive Pricing).

*Example #3*

47. The improper display and/or calculation of Add-On prices occurs at Affected Stores with other Add-Ons.  The charge for Whipped Cream on a Frozen Hot Chocolate serves as Example #3.

48. If a consumer seeks to order a frozen hot chocolate at an Affected Store, the default option in the Mobile Application Add-On menu will include Whipped Cream with the purchase.

49. With the "Whipped Cream" Add-On selected, the Mobile Application will nonetheless include no indication that Whipped Cream may – depending on the individual store's price for that Add-On – cause the price of the Frozen Hot Chocolate to increase beyond the displayed price.

50. In Exhibit 6, the Whipped Cream costs an extra $0.50, but no notice is given of that.

51. As with the cream cheese, butter, and butter substitute Add-On costs, the whipped cream Add-On cost at an Affected Store will never be disclosed or appear itemized, but be added only directly to the Sub-Total.

52. The Mobile Application's imposition or inclusion of such an Undisclosed Charge is a violation of Massachusetts law to which Dunkin' bound Mr. Kelledy in the Terms for use of the

Mobile Application. M.G.L. c. 93A; *see also, e.g.,* 940 CMR 3.04 (Deceptive Pricing); 940 CMR 3.13(1) (Pricing) and 940 CMR 3.13(1)(f) (Correct Pricing); 940 CMR 3.13(2) (Deceptive Pricing).

*Example #4*

53. Though Examples ## 1 – 3 of this Complaint catalogue a limited number of the Dunkin's Mobile Application Undisclosed Charges which appear to occur most frequently with Add-Ons, the overcharges can and do occur in other manners. *See, e.g.*, Exh. 7 (Mobile Order where Undisclosed Charge included double charge for muffin); *see also* Exh. 8 (third party online complaint posted "1 year ago" regarding Mobile Application Subtotal for coffee and munchkins purchased on or about October 6, 2021).

54. These additional Undisclosed Charges all share the same fundamental and common trait that, when the displayed prices for individual items are aggregated, the Sub-Total does not match the aggregated sum of individual prices.

55. Where Dunkin's Mobile Application improperly calculates the total price, fails to disclose all charges, or allows individual stores to include Undisclosed Charges for certain "Add-Ons" or other modifiers, these practices all qualify as "unfair" or "deceptive" actions by Dunkin'.

56. The Mobile Application's imposition or inclusion of such charges is a violation of Massachusetts law to which Dunkin' has bound Mr. Kelledy and all other Mobile Application users in the Terms for use of the Mobile App. M.G.L. c. 93A; *see also, e.g.,* 940 CMR 3.04 (Deceptive Pricing); 940 CMR 3.13(1) (Pricing) and 940 CMR 3.13(1)(f) (Correct Pricing); 940 CMR 3.13(2) (Deceptive Pricing).

*Further Purchases*

57. Mr. Kelledy continues to use, and wishes and desires to use, the Mobile Application for purchases at Dunkin' stores.

58. He continues to face overcharges because the Mobile Application system of display and/or calculation is unfairly and deceptively organized and operated by Dunkin'.

59. Mr. Kelledy cannot anticipate all manners in which his transactions with Dunkin' will be "unfair" and/or "deceptive" because, franchise-wide, there are a huge variety of "miscalculations" for Add-Ons, at different franchisee stores, in different manners, at different times.

60. Because of the organization and operation of the Mobile Application, Mr. Kelledy may not know what qualifies as a free Add-On, or whether he is being charged for an Add-On, how he will be charged for the Add-On, or how much he will be charged, when making a specific purchase.

61. Without modification of the Mobile Application, Dunkin' will continue to violate M.G.L. c. 93A as set forth above.

### F. Plaintiff's Demand Letter and Dunkin's Denial of Responsibility

62. On June 6, 2022, in compliance with M.G.L. c. 93A and the Terms of the Dunkin' Mobile Application, Mr. Kelledy sent a demand letter through counsel notifying Dunkin' of these violations of M.G.L. c. 93A. Exh. 9.

63. Dunkin' denied responsibility for the Undisclosed Charges, and made no offer to explain the Undisclosed Charges, to reimburse Mr. Kelledy for the Undisclosed Charges, or to cease the imposition of the Undisclosed Charges.

64. The Terms, under ¶4 ("Personal Use"), explicitly state that "The DD/BR Online Services are owned by Dunkin' Brands… ."

65. Dunkin' operates the Mobile Application, which calculates and displays the prices and costs of purchases to consumers, and determines how individual stores display their pricing and charges.

66.     Dunkin' is the only party that can remedy the unfair and deceptive pricing related to the Add-Ons which occurs across hundreds of individual stores, exactly because Dunkin' is the owner and operator of the Mobile Application itself.

### G. Plaintiff's Arbitration Demand and AAA's Referral to this Court

67.     On February 7, 2023, in accordance with the Terms governing disputes arising through use of the Mobile Application, Plaintiff filed an Arbitration Demand with the American Arbitration Association (the "AAA").

68.     In further accordance with the Terms, which in turn explicitly require compliance with the AAA's Commercial Arbitration Rules, Plaintiff paid a $3,500 filing fee, and filed his arbitration claim to be held in Suffolk County as the venue.

69.     On February 8, 2023, and on February 24, 2023, AAA acknowledged Plaintiff's claim for arbitration with letters to all Parties, but stated that Defendants' arbitration provisions did not comply with AAA standards. *See* Exh. 10 (AAA Letter dated February 8, 2023); Exh. 11 (AAA dated February 24, 2023).

70.     Specifically, the AAA asserted that:

- Dunkin' had not properly registered their arbitration provision with the AAA as required by the AAA;

- Dunkin's Terms improperly mandated that AAA's Commercial Arbitration Rules should apply, while in fact AAA Consumer Rules were mandated;

- Plaintiff should have been required to submit a filing fee of only $225, rather than the $3,500 filing fee which Plaintiff filed;

- Defendants should submit the remaining $375 of the filing fee;

- Defendants' listing of Suffolk County as the sole venue nationwide for arbitration was a material deviation from AAA requirements.

*See* Exhs. 10 and 11.

71. After Plaintiff allowed a stay of the arbitration until March 1, 2023, and after AAA reiterated to Defendants that these requirements must be met by March 10, 2023, Dunkin' failed to address the AAA's requirements, or reform the Mobile Application Terms.

72. On March 22, 2023, AAA declined to arbitrate this case and referred the Parties to court. *See* Exh. 12 (AAA Letter dated March 22, 2023).

V. **CLASS ACTION ALLEGATIONS**

73. Plaintiff Kelledy brings this action, on his own behalf and on behalf of a National Class of all others similarly situated, pursuant to Federal Rule of Civil Procedure and M.G.L. c. 93A, §9(2), with that National Class consisting of:

> All persons who made a purchase through the Defendants' Mobile Application in the United States during the Class Period where that purchase included an Undisclosed Charge.

74. In the alternative, Plaintiff Kelledy also brings this action pursuant to Federal Rule of Civil Procedure 23 and M.G.L. c. 93A, §9(2), on behalf of himself and a Massachusetts Class consisting of:

> All persons who made a purchase through the Defendants' Mobile Application in Massachusetts during the Class Period where that purchase included an Undisclosed Charge.

75. The Class Period commences from March 22, 2019 and runs until the date of entry of final judgment in this action.

76. An Undisclosed Charge occurs where the individual prices listed in the Mobile Application for individual items aggregate to less than the Sub-Total charged for the entire purchase. The Undisclosed Charge is the total amount charged in excess of the aggregate of the individual prices listed.

77. Class Members are identifiable from Mobile Application receipts and/or records of the

Defendants which provide evidence of the Undisclosed Charges. Those Undisclosed Charges are readily identified when the consumer knows to cross-check the disclosed costs of each individual item purchased versus the Sub-Total charged by Dunkin'.

78. The Class is composed of thousands of consumers who have made purchases which included Undisclosed Charges through Dunkin's Mobile Application in the United States. The joinder of all these consumers is impracticable except by means of a class action. The disposition of their claims in a class action will benefit both the parties and the Court.

79. Defendants are involved in thousands of consumer transactions in Massachusetts and the United States every year, and thus the Class is sufficiently numerous to make joinder impracticable, if not completely impossible.

80. There is a well-defined community of interest in the questions of law and fact involving and affecting the parties to be represented. Common questions of law and fact exist and such common questions predominate over any question of law or fact which may affect only individual Class members. Such common questions include the following:

    a. Whether Dunkin' misrepresented the true cost of its products;

    b. Whether Dunkin' knowingly withheld notice of Undisclosed Charges to bolster its profits and unjustly enrich itself and its franchisees;

    c. Whether Dunkin' knowingly or willfully continued to assess the Undisclosed Charges after becoming aware of those same charges, or in bad faith refused to grant relief for the Undisclosed Charges;

    d. Whether Dunkin' violated M.G.L. c. 93A, §2 and the common law through its common course of deceptive conduct as alleged herein;

    e. Whether by reason of Dunkin's M.G.L. c. 93A violations, Plaintiff and the

        Class are entitled to recover actual, statutory, or multiple damages;

    f. Whether by reason of Dunkin's violations of M.G.L. c. 93A Dunkin' should be required to refund all sums which Plaintiff and the Class Members paid for these Undisclosed Charges during the Class Period, or whether Defendants should be required to disgorge all profits which they made on account of the Undisclosed Charges;

    g. Whether Dunkin' was unjustly enriched at the expense of the Plaintiff and the Class members; and

    h. The nature and extent of any additional relief which the Class is entitled to recover under M.G.L. c. 93A or Massachusetts' common law.

81. Plaintiff Kelledy asserts claims that are typical of the claims of the entire Class. He will fairly and adequately represent and protect the interests of the Class. Plaintiff has no interests antagonistic to those of the Class. Plaintiff has retained counsel who is competent and experienced in class action litigation.

82. Defendants have acted or refused to act on grounds generally applicable to all Class Members, thereby making final relief concerning the Class as a whole appropriate.

83. Plaintiff and the Class have suffered injury and damages as a result of Dunkin's wrongful conduct as alleged herein. Absent a representative action, Class members will continue to suffer injury, thereby allowing these alleged violations of law to proceed without remedy, and allowing Dunkin' to retain the proceeds of its ill-gotten gains.

84. Plaintiff anticipate that there will be no difficulty in the management of this litigation. A class action is superior to other available methods for the fair and efficient adjudication of this controversy.

## Causes of Action

### Count I: Violations of M.G.L. c. 93A
### (As to Dunkin's Undisclosed Charges)

85. Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

86. The Mobile Application Terms specify that parties will be bound by Massachusetts law.

87. Plaintiff, and all others similarly situated, are consumers within the meaning of M.G.L. c. 93A.

88. Defendants are conducting business within the Commonwealth of Massachusetts.

89. Use of the Mobile Application to purchase Dunkin' products constitutes a transaction.

90. The Mobile Application displays prices, withholds notice of the Undisclosed Charges, and calculates the Sub-Total in ways that are unfair and deceptive, and violations of Massachusetts pricing regulations. M.G.L. c. 93A; *see also, e.g.,* 940 CMR 3.04 (Deceptive Pricing); 940 CMR 3.13(1) (Pricing); 940 CMR 3.13(1)(f) (Correct Pricing); 940 CMR 3.13(2) (Deceptive Pricing).

91. Dunkin's organization and operation of the Mobile Application system has resulted in M.G.L. c. 93A violations including those suffered by Mr. Kelledy in April 2022 and by similarly situated individuals throughout the Class Period.

92. Dunkin's organization and operation of the Mobile Application system continues to result in routine violations of M.G.L. c. 93A which threaten to affect Mr. Kelledy, and all others similarly situated, going forward.

93. Dunkin's refusal to grant relief after receiving Plaintiff's June 6, 2022 demand letter was made in bad faith with knowledge or reason to know that the act or practice was a violation of M.G.L. c. 93A.

**Count II: Violations of M.G.L. c. 93A**
**(As to the Mobile Application Terms of Use)**

94. Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

95. Use of the Mobile Application requires Plaintiff and other Class Member consumers' agreement to the Dunkin' Mobile Application Terms.

96. Plaintiff, and all others similarly situated, are consumers within the meaning of M.G.L. c. 93A.

97. Defendants are conducting business within the Commonwealth of Massachusetts.

98. Use of the Mobile Application to purchase Dunkin' products constitutes a transaction.

99. The American Arbitration Association has declined to arbitrate claims in accordance with Dunkin's Mobile Application Terms, though the Terms specify that the American Arbitration Association is the exclusive forum for resolution of disputes under the Terms.

100. The AAA has asserted that:

    a. Dunkin' failed to submit the Terms to the AAA for review, as required by the AAA; failed to register their arbitration provision with the AAA, as required by the AAA; and failed to pay the required registration fee;

    b. Dunkin's Terms improperly mandate that AAA's Commercial Arbitration Rules should apply, while in fact AAA Consumer Rules are mandated by the AAA;

    c. Plaintiff should be required to submit a filing fee of only $225, rather than the $3500 filing fee which Plaintiff filed;

    d. Defendants should submit $375 as a filing fee, with an arbitrator compensation deposit of $2,500;

    e. Defendants' listing of Suffolk County as the sole venue nationwide for arbitration constitutes a material deviation from AAA requirements.

101. Defendants' Terms mandating that disputes be resolved by arbitration with the AAA as the arbitrator, in conjunction with Defendants' inclusion of provisions mandating consumer

compliance with specific Terms that the AAA does not adhere to and will not apply, constitutes a M.G.L. c. 93A violation.

### Count III: Unjust Enrichment

102. Mr. Kelledy hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

103. Dunkin' has profited through its operation of the Dunkin' Mobile Application, including *inter alia*, through greater revenues for Dunkin' and the receipt of royalties.

104. Additional revenues, collected through the charging of Undisclosed Charges, have contributed to Dunkin's profits.

105. In equity and good conscience, Dunkin' should not be permitted to retain illegally obtained benefits such as any revenues obtained through the collection of the Undisclosed Charges.

### Prayer for Relief

Wherefore, Mr. Kelledy respectfully requests:

(a) A declaration that Dunkin's operation of the Mobile Application, as described above, constitutes a violation of M.G.L. c. 93A;

(b) A declaration that the arbitration provision of Dunkin's Terms, as described above, constitutes a violation of M.G.L. c. 93A;

(c) Injunctive relief requiring Dunkin' to cease its deceptive and unfair pricing and collection of Undisclosed Charges, and to modify the Mobile Application so that Add-On charges are uniformly categorized and displayed across the Dunkin' Mobile Application and all Dunkin' stores utilizing the Mobile Application system;

(d) Injunctive relief requiring Dunkin' to reform its Terms, or drop the mandatory requirement of the Terms that disputes be arbitrated;

(e) Statutory damages of $25 for Dunkin's violations of M.G.L. c. 93A;

(f) Multiple damages for Dunkin's intentional, willful, or bad faith violations of M.G.L. c. 93A;

(g) An accounting of all Undisclosed Charges;

(h) Disgorgement of illegally obtained benefits;

(i) All reasonable attorneys' fees and costs in this matter;

(j) Such other and further relief as the Court may deem just and proper.

## Jury Demand

Plaintiff demands a trial by jury on all claims so triable.

Respectfully submitted,

Martin Kelledy,

By his attorney,

/s/ *Jeffrey G. Thorn*
Jeffrey G. Thorn (BBO #677222)
Thorn Law PLLC
90 Canal Street, Suite 120
Boston, MA  02114
jgt@thornlawpllc.com
Phone: (617) 835-6681
Fax:    (844) 835-6681

Dated: March 22, 2023