UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| Martin Kelledy,<br>Individually and on Behalf of All<br>Other Persons Similarly Situated,<br><br>    Plaintiff,<br><br>v.<br><br>Dunkin' Brands, Inc. *and*<br>Dunkin' Brand Group Inc.,<br><br>    Defendants. | Civil Action No. 1:23-cv-10626-RGS |

**PLAINTIFF MARTIN KELLEDY'S OPPOSITION TO DEFENDANTS' MOTION TO (1) DISMISS THE COMPLAINT AND COMPEL ARBITRATION OR (2) IN THE ALTERNATIVE, STRIKE CLASS-ACTION ALLEGATIONS FROM COMPLAINT**

Respectfully submitted,

Martin Kelledy,
By his attorney,

Jeffrey G. Thorn, Esq.
(BBO No. 677222)
Thorn Law PLLC
90 Canal Street, Suite 120
Boston, MA 02114
Telephone: (617) 835-6681
Fax: (844) 835-6681
jgt@thornlawpllc.com

Dated: June 9, 2023

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

I.    INTRODUCTION .......................................................................................................1

II.   STATEMENT OF FACTS...........................................................................................2

    A. The Dunkin' Mobile Application and Application Errors ................................... 2

    B. The Dunkin' Terms of Use ................................................................................. 2

    C. Mr. Kelledy's Efforts to Comply with Dunkin's Arbitration Terms................................ 4

    D. Dunkin's Failure to Comply and the AAA's Closure of the Matter and Referral to
    Court ................................................................................................................... 6

    E. Dunkin's Continuing Material Breach of the Terms Against the Putative Class ............ 6

III.  LEGAL ARGUMENT...................................................................................................7

    A. The FAA Text Requires a Valid Agreement and Compliance Therewith .......................7

    B. The Dunkin's Arbitration Provisions Are Not Enforceable ................................9

        1. Dunkin's Arbitration Terms Are Illusory.................................................. 9

        2. Material Terms of the Dispute Provision Are Misrepresented................................ 10

    C. Defendants' Defenses to Waiver and Breach Fail ........................................ 12

    D. Per the FAA Text, Arbitration Has "Already Been Had"................................ 13

    E. Per Massachusetts Law, Dunkin Has Waived Any Right to Arbitrate........................... 14

    F. Dunkin's Gamesmanship and Repeated Breaches Have Brought Them to Court ......... 15

    G. The Class Allegations Should Not Be Struck ................................................ 17

        1. Plaintiff Does Not Allege That Customers Are Bound by the Arbitration
        Clause ........................................................................................................ 17

        2. The First Circuit Disfavors Preemptively Striking Class Allegations...................... 17

        3. Massachusetts' Law Favors Consumer Class Actions ............................................ 18

        4. Dunkin's No Class Action Waiver Applies Specifically and Only to Class
        Arbitration ................................................................................................. 18

        5. Defendants' Assertions of "Arbitration Asymmetry" Are Premature........................19

IV.   CONCLUSION...........................................................................................................20

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Bachorz v. Miller-Forslund,*
    812 F. Supp. 2d 83 (D. Mass. 2011) ...................................................................15

*Biggs v. Midland Credit Mgmt.,*
    2018 WL 1225539, 2018 U.S. Dist. LEXIS 41146 (E.D.N.Y. Mar. 9, 2018) .................19

*Bright v. Brookdale Senior Living,*
    2021 WL 6496799, 2021 U.S. Dist. LEXIS 250711 (M.D. Tenn. Mar. 12, 2021) .........19

*Canales v. Univ. of Phoenix, Inc.*
    854 F. Supp. 2d 119 (D. Me. 2012) ...................................................................10

*Carideo v. Dell, Inc.,*
    No. C06-1772JLR, 2009 WL 3485933 (W.D. Wash. Oct. 26, 2009) ..............................12

*Crean v. Morgan Stanley Smith Barney, LLC,*
    2023 WL 363589, 2023 U.S. Dist. LEXIS 10814 (D. Mass. Jan. 2023)..........................13

*Crossman v. Life Care Ctrs. of Am., Inc.,*
    225 N.C. App. 1 (N.C. App. Ct. Jan 15, 2013**)**................................................................12

*Davis v. Dawson, Inc.,*
    15 F. Supp. 2d 64 (D. Mass. 1998) ...........................................................................18,19

*Escobar-Noble v. Luxury Hotels Int'l of P.R., Inc.,*
    680 F.3d 118 (1st Cir. 2012)............................................................................................9

*Feeney v. Dell Inc.,*
    466 Mass. 1001 (2013) ............................................................................................. 18

*Fenoglio v. Augat, Inc.,*
    50 F. Supp. 2d 46 (D. Mass. 1999), *aff'd,* 254 F.3d 368 (1st Cir. 2001) ..........................18

*Fraga v. Premium Retail Servs.,*
    583 F. Supp. 3d 275 (D. Mass. 2022) ............................................................................18

*Freeman v. SmartPay Leasing, LLC,*
    771 F. App'x 926 (11th Cir. 2019) ................................................................................14

*Functional Prod. Trading, S.A. v. I-Grain, LLC*,
  No. 1:12-CV-0355-JEC-AJB, 2012 WL 13013592 (N.D. Ga. Mar. 19, 2012)................12

*Garcia v. Cent. Coast Rests., Inc.*,
  2022 WL 657972, 2022 U.S. Dist. LEXIS 38803 (N.D. Cal. Mar. 4, 2022) ..............19,20

*Hammon v. U.S. Fire Insur. Comp. (Delaware)*,
  No. 4:22-cv-02004, Slip Opinion (S.D. Tex. Feb. 21, 2023)...........................................14

*Heisman v. Wyndham Vacation Resorts, Inc.*,
  2021 WL 1138125, 2021 U.S. Dist. LEXIS 55369 (D.N.J. Mar. 22, 2021) ...............................13

*Hershenow v. Enter. Rent-A-Car Co. Of Bos., Inc.*,
  445 Mass. 790 (2006) ...............................................................................................16

*In re Tyco Int'l Ltd. Sec. Litig.*,
  422 F.3d 41 (1st Cir. 2005).........................................................................................13

*Kenda Corp. V. Pot O'Gold*,
  329 F.3d 216 (1st Cir. 2003)...................................................................................11,12

*Lamps Plus, Inc. v. Varela*,
  203 L. Ed. 2d 636, 139 S. Ct. 1407 (2019) ........................................................................9

*Manning v. Boston Med. Ctr. Corp.*,
  725 F.3d 34 (1st Cir. 2013) ...................................................................................17,18

*Mass. Hous. Opportunities Corp. v. Whitman & Bingham Assocs., P.C.*,
  83 Mass. App. Ct. 325 (2013)..................................................................................10,11

*McNamara v. S.I. Logistics, Inc.*,
  No. 17-CV-12523-ADB, 2018 WL 6573125 (D. Mass. Dec. 13, 2018) ..........................9

*M.J.G. Properties, Inc. v. Hurley*,
  27 Mass. App. Ct. 250 (1989).....................................................................................15

*Morgan v. Sundance, Inc.*,
  212 L. Ed. 2d 753, 142 S. Ct. 1708 (2022).......................................................................8

*Murphy v. Ind. Fin. Co.*,
  2020 WL 1452095 (N.D. Ind. Mar. 25, 2020) ..............................................................17

*Nat'l Fed'n of the Blind v. The Container Store, Inc.*,
  904 F.3d 80 (1st Cir. 2018) .........................................................................................9

*Noble Capital Fund Mgmt., L,L,C. v. US Capital Glob. Inv. Mgmt., L.L.C.*,
  31 F.4th 333 (5th Cir. 2022) .......................................................................................14

*Pre-Paid Legal Servs., Inc. v. Cahill*,
    786 F.3d 1287 (10th Cir. 2015) ......................................................................14

*Samsill v. Dave & Buster's of Massachusetts, Inc.*,
    100 Mass. App. Ct. 1115, 2021 WL 5795481 (Dec. 6, 2021) (unpublished)...................15

*Sink v. Aden Enters.*,
    352 F.3d 1197 (9th Cir. 2003) ...................................................................13,14

*Stanley v. A Better Way Wholesale Autos, Inc.*,
    2018 WL 3872156, 2018 U.S. Dist. LEXIS 137645 (D. Conn. Aug. 15, 2018) ...................17

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662, 130 S. Ct. 1758, 176 L. Ed. 2d 605 (2010)..................................8

*Tillman v. Tillman*,
    825 F.3d 1069 (9th Cir. 2016) ......................................................................14

*Viking River Cruises, Inc. v. Moriana*,
    142 S. Ct. 1906 (2022)..................................................................................8

*Waithaka v. Amazon.com, Inc.*,
    966 F.3d 10 (1st Cir. 2020) .........................................................................18

*Zoll Med. Corp. v. Barracuda Networks, Inc.*,
    585 F. Supp. 3d 128 (D. Mass. 2022) ...........................................................15

## Statutes

9 U.S.C. §2...........................................................................................................7

9 U.S.C. §3........................................................................................................8,13

9 U.S.C. §4........................................................................................................8,13

M.G.L. c. 93A.....................................................................................................13

## Other Authorities

Emily Villano, *Arbitration Asymmetries in Class Actions*,
    131 Yale L.J. 742 (2022) ..............................................................................20

Meirav Furth-Matzkin, *On the Unexpected Use of Unenforceable*
*Contract Terms: Evidence from the Residential Rental Market*,
    Journal of Legal Analysis, Volume 9, Issue 1, Spring 2017.............................17

Plaintiff respectfully Opposes Defendants' Motion to (1) Dismiss the Complaint and Compel Arbitration or (2) In the Alternative to Strike Class Allegations from the Complaint.

## I.      **INTRODUCTION**

Defendants Dunkin' Brands, Inc. and Dunkin' Brand Group Inc. (collectively, "Dunkin'" or "Defendants") appear before this Court entirely as a result of Defendants' actions.  At the most basic substantive level, Dunkin' has willfully ignored the fact that its Mobile Application (the "Mobile App") appends undisclosed fees to myriad customer charges – and has done for years. Similarly, while Defendants wish the Court to believe that arbitration has been derailed by a singular procedural "mistake," that is not the case.  Instead Defendants' repeated, willful actions – which continue today – have made private individual arbitration not only inappropriate for Mr. Kelledy, but inequitable for the putative class members.  As to the responsible parties:

- It is Defendants who drafted an agreement repeatedly and explicitly binding the parties to the American Arbitration Association (the "AAA") as the sole arbitrator and the AAA rules as the sole appropriate rules.

- It is Defendants who improperly bound the Parties to AAA's Commercial Rules (for complex commercial matters) and fees (totaling $3,500 for Mr. Kelledy) and a singular forum, nationally, of Suffolk County, Massachusetts (in contravention to AAA's due process rules).

- It is Defendants who then failed to register their arbitration agreement with the AAA, in violation of their duties and AAA requirements.

- It is Defendants who, when confronted with an arbitration claim for the first time, then failed to pay AAA arbitration fees with respect to Mr. Kelledy's matter until after the AAA closed the matter and explicitly referred it to court.

- It is Defendants who, to this day, have not reformed the Terms of Use or provided notice to Users that those terms materially misrepresent what any arbitration would look like.

These actions concern the terms most material to any individual arbitration (the cost, the location, and the rules) and the procedural safeguards most relevant to any consumer (consent and notice).

1

Further, these actions are not truly mistakes. Dunkin's "mistakes" all deter legitimate legal action by consumers who have suffered real, albeit small, damages. Even now, though Defendants claim they have brought their Terms into compliance with AAA procedures, this is not true. In breach of contract, Defendants have still provided no notice of the new "more accommodating" Terms to class members. Meanwhile, claims – governed by a contractual one-year statute of limitation – lapse in the interim. In effect, Dunkin' claims the benefits of private individual arbitration while denying the concomitant duties. Rather than a single administrative oversight, these actions denote a pattern of ripe gamesmanship. Under normal contractual rules it would not be tolerated; even in the guise of arbitration it should not be tolerated here.

## II.  STATEMENT OF FACTS

### A.  The Dunkin' Mobile Application and Application Errors

As set forth in the Complaint, the Dunkin' Mobile App is an electronic system for ordering Dunkin' Purchases. Complaint ("Compl.") ¶1.

Mr. Kelledy's claims concern undisclosed but systematic overcharges rendered through Dunkin's Mobile App. These are small claims. In Mr. Kelledy's instance, he identified two overcharges of $1.25 each. Compl. ¶¶ 26-33. Plaintiff's counsel, in verifying Mr. Kelledy's overcharges, determined that Mobile App overcharges routinely took place at hundreds of Dunkin' stores nationwide. Compl. ¶3. Online complaints demonstrate that these overcharges extend back years. *See* Compl. Exh. 7 (dated Oct. 6, 2021). Discovery, when taken, will reveal that Dunkin' customers repeatedly and directly informed Dunkin' of the overcharges for over a year, at a minimum, and that Dunkin' refused to grant them relief, in bad faith. Compl. at ¶ 93.

### B.  The Dunkin' Terms of Use

Use of the Dunkin' Mobile Application is based upon acceptance of the Terms of Use (the "Terms"). Compl. at ¶14. The Terms are attached to the Complaint as Exh. 8. With Defendants'

Motion, Defendant cites (at "SOF ¶1") a single portion of the Terms – a non-binding Preamble and first paragraph of the "Agreement to Arbitrate" provisions (the "Arbitration Provisions") – and thereafter paraphrases all else.  The Terms, however, contain additional terms, both within the Arbitration Provisions, and which directly bear upon the Arbitration Provisions.

First, the "Changes to Terms" provision asserts Dunkin's unilateral right to make contractual changes, <u>with notice</u>, but prohibits retroactive changes to the Arbitration Provisions.

> We may change these Terms so please check back from time to time. **If we make material changes to these Terms, we will inform you in advance by posting a notice within the DD/BR Online Services.**  If you are a registered user or are on our electronic mailing list, we may also notify you of such material changes via email.  We may ask you to affirmatively accept changes to these Terms at the time of your next account sign in, access or use of the DD/BR Online Services.  All changes are effective when we post them and apply to your access and use of the DD/BR Online Services thereafter. **Changes to the Dispute Resolution provisions (Section 20 below) do not apply to any dispute for which you or we have actual notice prior to the date that the revised Terms are effective.**

Compl. Exh. 8 at p. 2 ("Changes to Terms") (emphasis added).[1]

Second, the Arbitration Provisions at ¶1, without the non-binding Preamble, state:

> **WE BOTH AGREE TO ARBITRATE**. You hereby agree that any dispute between you and Dunkin' Brands … **will be settled by binding arbitration in Suffolk County, Commonwealth of Massachusetts administered by the American Arbitration Association (AAA) under its Commercial Arbitration Rules** (available at adr.org), in effect on the date thereof. **If there is a conflict between AAA Rules and the rules set forth in this Agreement to Arbitrate, the rules set forth in this Agreement to Arbitrate will govern.** For purposes of this section, these Terms and related transactions will be subject to and governed by the Federal Arbitration Act, 9 U.S.C. sec. 1-16 (FAA).

Emphasis added. Third, the Arbitration Provisions at ¶4 further state:

> **Payment of all filing, administration and arbitrator fees will be governed by the AAA's rules.**  If, however, you are able to demonstrate that the costs of arbitration will be prohibitive as compared to the costs of litigation, Dunkin' Brands will pay as

---

[1] No "Dispute Resolution" provision exists at Section 20.  When downloading the application on a Mobile Device, the "Agreement to Arbitrate" provisions appear as Section 21.

much of the filing, administration and arbitrator fees as the arbitrator deems
necessary to prohibit the arbitration from being cost-prohibitive to you.

Additional references to the AAA, and solely to the AAA, appear throughout.  Sample arbitration

demands are referenced at the AAA's website, and arbitration is initiated properly only by sending

three copies with filing fee to the AAA.  Compl. Exh. 8 at p. 18.  Finally, though referenced by

Defendants as a "class-action participation waiver," Mem. at 13, the Arbitration Provisions in fact

contain a class arbitration waiver provision:

> No Class Actions. Dunkin' Brands and you agree that any Covered Dispute will be
> submitted to <u>arbitration</u> on an individual basis only. **Neither Dunkin' Brands nor
> you are entitled to <u>arbitrate</u> any Covered Dispute as a class, representative or
> private attorney action and the <u>arbitrator(s)</u> will have no authority to proceed
> on a class, representative or private attorney general basis**.

Compl. Exh. 8 at p. 19 (emphasis added).

### C.  <u>Mr. Kelledy's Efforts to Comply with Dunkin's Arbitration Terms</u>

On June 6, 2022, in compliance with M.G.L. c. 93A and the Terms of the Dunkin' Mobile

Application, Mr. Kelledy sent a demand letter through counsel notifying Dunkin' of violations of

M.G.L. c. 93A.  Compl. ¶62 and Exh. 9.  That demand letter complied with the Arbitration

Provision and allowed Dunkin' a 60-day window to respond.  Compl. Exh. 9.  On July 14, 2022,

Dunkin' counsel denied corporate responsibility and asserted that franchisees were "responsible

for the pricing files applicable to their restaurants."  Compl. ¶63; Thorn Declaration at Exh. 1.

On February 7, 2023, in accordance with the Terms governing disputes arising through use

of the Mobile Application, Plaintiff filed an Arbitration Demand with the American Arbitration

Association (the "AAA"). Compl. at ¶67.  In further accordance with the Terms, which explicitly

require compliance with the AAA's Commercial Arbitration Rules, Plaintiff paid a $3,500 filing

fee, and filed his arbitration claim to be held in Suffolk County as the venue. Compl. at ¶68.

On February 8, 2023, AAA acknowledged Plaintiff's claim for arbitration with letters to all Parties, but stated that Defendants' arbitration provisions did not comply with AAA standards. Compl. at ¶68; Compl. Exh. 10 (AAA Letter dated Feb. 8, 2023); Compl. Exh. 11 (AAA dated Feb. 22, 2023).  The AAA asserted that:

- Dunkin' had not properly registered their arbitration provision with the AAA as required by the AAA;

- Dunkin's Terms improperly mandated that AAA's Commercial Arbitration Rules should apply, while in fact AAA Consumer Rules were mandated;

- Plaintiff should have been required to submit a filing fee of only $225, rather than the $3,500 filing fee which Plaintiff filed;

- Defendants were required to pay additional filing fees;

- Defendants' listing of Suffolk County as the sole venue nationwide for arbitration was a material deviation from AAA requirements.

On February 22, 2023, in response to an email from Dunkin' counsel conveying that Plaintiff's counsel had extended Defendants' time to respond until March 1, 2023, AAA wrote the Parties to state that Dunkin's waiver and fees would still be due. Thorn Decl. at Exh. 2.

On February 24, 2023, AAA again wrote the parties to assert "We have also not received the business' agreement to waive the deviations identified in its consumer arbitration agreement and have this and all consumer arbitrations heard in compliance with the AAA's Consumer Due Process Protocol. … Both payment and the signed waiver are required for the AAA to continue with administration of this dispute."  Compl. at Exh. 11.  Furthermore, the AAA affirmatively stated that "should the AAA decline to administer an arbitration, either party may choose to submit its dispute to the appropriate court for resolution."  Compl. at Exh. 11.  Later, on February 24, 2023, and because Dunkin's outside counsel had recently been retained, Plaintiff's counsel himself forwarded both the Feb. 8 and Feb. 24 AAA letters to Dunkin's counsel.  Thorn Decl. at Exh. 3.

In response to the many AAA communications, Dunkin' failed to: register the Arbitration Agreement as requested, pay the registration fee as requested, sign the waiver as requested, pay the arbitration fees as requested, or update the Terms for its customers, as it should have.

### D. Dunkin's Failure to Comply and the AAA's Closure of the Matter and Referral to Court

On March 22, 2023, AAA declined to arbitrate this case and referred the Parties to court. *See* Exh. 12 (AAA Letter dated March 14, 2023). Specifically, the AAA stated:

> We have not received the required waiver and fees from the business in this matter. **Accordingly, we must decline to administer this case and have closed our file.** According to R-1(d) of the Consumer Arbitration Rules, should the AAA decline to administer an arbitration, **either party may choose to submit its dispute to the appropriate court for resolution.**

Emphasis added. Thereafter, Plaintiff responded to all parties – including Defendants – that Plaintiff would "follow up with an appropriate court." *See* Thorn Decl. at Exh. 5. Dunkin's response on March 22, 2023 that it intended to bring its arbitration provisions into compliance followed not only <u>AAA's closure</u> of the arbitration <u>but also Plaintiff's confirmation that Plaintiff intended to proceed in Court</u>. On March 23, 2023, the AAA reaffirmed its closure letter. *See* Decl. of David Thomas at Exh. 3 (Bates No. 0005).

On March 29, 2023, Defendants attempted to refile the arbitration matter. Thomas Decl. at Exh. 3 (Bates No. 0016). As indicated in correspondence of that same day, Plaintiff noted that Defendants' filing did not comply with their own Arbitration Agreement provisions and reaffirmed that Plaintiff no longer consented to arbitration. Thorn Decl. at Exh. 6. The AAA again denied the refiling and reaffirmed closure on April 4, 2023. Thomas Decl. at Exh. 3 (Bates No. 0033).

### E. Dunkin's Continuing Material Breach of the Terms Against the Putative Class

During this epic electronic mail struggle, on or about March 30, 2023, Dunkin' claimed to register its arbitration provisions with the AAA and make appropriate payment of outstanding fees.

6

Thorn Decl. at Exh. 7.  With respect to Dunkin's Users, however, Dunkin' and the AAA's communications afforded those consumers neither (a) notice nor (b) relief.  This constitutes a material breach of the Terms.

As to notice, the Terms assert that "If we make material changes to these Terms, we will inform you in advance by posting a notice within the DD/BR Online Services."  Compl. Exh. 8 ("Changes to Terms").  No notice of changes has been provided to customers.  *See* Thorn Decl. at Exh. 8 (attaching an excerpt of the Terms downloaded June 9, 2023, affirming no update since Apr. 27, 2021).  Second, as to relief, the Arbitration Provisions in force remain the same – the Terms unacceptable to the AAA because of consumer due process concerns.  Even more, the Terms continue to assert: "If there is a conflict between AAA Rules and the rules set forth in this Agreement to Arbitrate, the rules set forth in this Agreement to Arbitrate will govern." *Id.*

### III.    LEGAL ARGUMENT

Defendants suggest that "the only conduct at issue is Defendants' initial failure to complete certain AAA administrative requirements."  Def. Mem. at 8.  This is factually inaccurate and legally incorrect.  Below, Plaintiff first addresses: (A.) the FAA requirements; (B.) the fact that Dunkin' Arbitration Terms are not enforceable; (C.) the limit of Defendants' analysis of "litigation conduct"; (D.) the fact that arbitration "has been had" per FAA terms; (E.) the fact that Massachusetts law supports waiver; and (F.) the fact that Dunkin's gamesmanship and breaches have brought them to Court – not any single "mistake."  Plaintiff then addresses (G.) the fact that Plaintiff's Class Allegations should not be struck.

### A.    The FAA Text Requires a Valid Agreement and Compliance Therewith

This Court is fully conversant with the Federal Arbitration Act. Defendant has properly cited to 9 U.S.C. § 2 (the "Savings Clause") as relevant to the enforceability of the Arbitration

Provisions.  In addition to §2, however, §§3 and 4 are relevant. 9 U.S.C. §3 states that a court:

> shall on application … stay the trial of the action <u>until such arbitration has been had</u> in accordance with the terms of the agreement, <u>providing the applicant</u> for the stay <u>is not in default</u> in proceeding with such arbitration.

Emphasis added.  9 U.S.C. §4 states that the court:

> shall hear the parties, and <u>upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue</u>, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

Emphasis added.   These provisions are relevant because, with respect to the putative class, both the "making of the agreement" and Dunkin's "failure to comply" are called into question (*see below* at § II.B and § II.C), and with respect to Mr. Kelledy "an arbitration has been had" (*see below* at § II.D).  In considering these matters, "[T]he FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." *Morgan v. Sundance, Inc.*, 212 L. Ed. 2d 753, 142 S. Ct. 1708, 1713 (2022). In short, "If an ordinary procedural rule—whether of waiver or forfeiture or what-have-you—would counsel against enforcement of an arbitration contract, then so be it. The federal policy is about treating arbitration contracts like all others, not about fostering arbitration." *Id.*

Further, the Supreme Court has emphasized that the core principles supporting arbitration are consent and notice.  The "first principle" of our FAA jurisprudence: that "[a]rbitration is strictly 'a matter of consent.'" *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1918; *see also Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 682, 130 S. Ct. 1758, 1773, 176 L. Ed. 2d 605 (2010) ("Consent is essential under the FAA because arbitrators wield only the authority they are given. That is, they derive their "powers from the parties' agreement to forgo the legal process and submit their disputes to private dispute resolution."). Finally, the Supreme Court has stated that benefits for parties are "lower costs, greater efficiency and speed, and the

ability to choose expert adjudicators to resolve specialized disputes." *Lamps Plus, Inc. v. Varela*, 203 L. Ed. 2d 636, 139 S. Ct. 1407, 1416 (2019); *id.* (2019) (internal citations omitted) ("Parties may generally shape such agreements to their liking by specifying with whom they will arbitrate, the issues subject to arbitration, the rules by which they will arbitrate, and the arbitrators who will resolve their disputes."). Here, however, there is neither consent nor notice for the consumers, and the Terms benefit no Party through lower costs, greater speed, or choice in adjudicators.

### B.  The Dunkin' Arbitration Provisions Are Not Enforceable

Fundamentally, Dunkin's Arbitration Provisions have little to do with consent and nothing to do with notice.  Instead, those Terms have everything to do with assuring that consumers obtain no relief from Dunkin', even where their claims are legitimate.

### 1.  *Dunkin' Arbitration Terms Are Illusory*

As a threshold matter, "a court should not compel arbitration unless and until it determines that the parties entered into a validly formed and legally enforceable agreement covering the underlying claims(s).'" *Nat'l Fed'n of the Blind v. The Container Store, Inc.*, 904 F.3d 70, 80 (1st Cir. 2018) (quoting *Escobar-Noble v. Luxury Hotels Int'l of P.R., Inc.*, 680 F.3d 118, 121 (1st Cir. 2012)).  The First Circuit has stated that "where one party to an arbitration agreement seeks to invoke arbitration to settle a dispute, if the other party has the right to change the terms of the agreement to avoid arbitration, then the agreement was illusory from the outset." *Nat'l Fed'n of the Blind*, 904 F.3d at 86 (applying Texas law). "Courts have applied similar reasoning to find arbitration agreements illusory under Massachusetts law." *McNamara v. S.I. Logistics, Inc.*, No. 17-CV-12523-ADB, 2018 WL 6573125, at *3 (D. Mass. Dec. 13, 2018) (holding arbitration agreement illusory); *Canales v. Univ. of Phoenix, Inc.* 854 F. Supp. 2d 119. (D. Me. 2012).

Dunkin's Change of Terms provision states, in full:

> We may change these Terms so please check back from time to time. If we make material changes to these Terms, we will inform you in advance by posting a notice within the DD/BR Online Services.  If you are a registered user or are on our electronic mailing list, we may also notify you of such material changes via email.  We may ask you to affirmatively accept changes to these Terms at the time of your next account sign in, access or use of the DD/BR Online Services.  All changes are effective when we post them and apply to your access and use of the DD/BR Online Services thereafter. Changes to the Dispute Resolution provisions (Section 20 below) do not apply to any dispute for which you or we have actual notice prior to the date that the revised Terms are effective.

Compl. Exh. 8 at p. 2 ("Changes to Terms").  Such a clause renders the contract and its Arbitration Provisions illusory, unless the retroactive provision (prohibiting changes to the Dispute Resolution provisions where disputes have been noticed) is strictly enforced.

But clearly, such a provision cannot be strictly enforced.  First, Defendants were provided "actual notice" of the claims of Mr. Kelledy and the putative class on Mar. 22, 2023, when Plaintiff filed this class action.  Per Defendants' correspondence, the AAA did not receive and approve changes until March 30, 2023. Thorn Decl. at Exh. 7.  And, until today, class members still have not received notice of any changes. *Id.* at Exh. 8. In short, either the Arbitration Provisions were illusory since Dunkin' could change Arbitration Provisions, even retroactively – or Dunkin' has materially breached the Change of Terms provision for the entire putative class by altering the Arbitration Provisions, retroactively, while it had "actual notice" of this dispute.

That these Terms and facts cannot be reconciled, however, is not simply happenstance.  It is the direct result of Dunkin' cultivating inadequate Arbitration Provisions that cannot survive the very real consent and notice protections inherent in contract law and the AAA.

### 2. *Material Terms of the Dispute Provision Are Misrepresented*

Massachusetts law is clear that "misrepresentation … may operate to void a contract, prevent the formation of a contract, or be the grounds allowing for the reformation of a contract."

*Mass. Hous. Opportunities Corp. v. Whitman & Bingham Assocs., P.C.*, 83 Mass. App. Ct. 325, 330 n.7 (2013) (internal citations to the Restatement (Second) of Contracts omitted). Misrepresentation may be intentional or negligent. Here, consumers can little fathom what terms they have entered into.

- The Terms assert that the AAA's Commercial Arbitration Rules will apply. The AAA Rules assert that the Consumer Arbitration Rules will apply.[2] The Terms nonetheless assert that "If there is a conflict between AAA Rules and the rules set forth in this Agreement to Arbitrate, the rules set forth in this Agreement to Arbitrate will govern."

- The Terms require that disputes "will be settled" "in Suffolk County, Commonwealth of Massachusetts administered by the American Arbitration Association (AAA)." The AAA Consumer Due Process Protocol rejects this and asserts that "Location of the proceeding must be reasonably accessible."

- The AAA requires that "Costs of the process for the consumers must be reasonable." The Terms reference the Commercial Arbitration Rules (and filing fees) which are not reasonable (and cannot be discounted until after filing when an arbitrator has been appointed). The Commercial Arbitration Fee to initiate the arbitration for Mr. Kelledy was $3,500. By contrast, Mr. Kelledy's damages were $2.50 and the Terms' Limitation of Liability was "the amount paid by you … or $100, whichever is less."

- The Terms assert that Dunkin' may unilaterally make Material Changes that are retroactive with regard to any non-Arbitration Provision. Terms at p. 2 ("We may change these Terms…"). However, if changes if are made, notice will be provided. "If we make material changes to these Terms, we will inform you in advance by posting a notice within the DD/BR Online Services.") Compl. Exh. 8 (Terms) at p. 2.

- Dunkin' agreed to Terms modifications with AAA on March 30, 2023. Thorn Decl. Exh. 7. However, "[T]he rules set forth in this Agreement to Arbitrate" have not been modified since this dispute arose; no notice of any changes has ever been provided to consumers; and the Agreement to Arbitrate still purportedly binds consumers to terms the AAA will not enforce. Thorn Decl. at ¶10 and Exh. 8.

Despite the fact that these misrepresentations eliminate any notions of consent or arbitration benefits (such as "simplicity") to consumers, Dunkin' nonetheless seeks to hold parties to a yet undisclosed set of rules. "Such a result does not accord with equitable principles of rescission."

---

[2] All AAA Rules and Fee Schedules are available at www.adr.org.

*Kenda Corp. v. Pot O'Gold*, 329 F.3d 216, 224 (1st Cir. 2003). In reforming the contract, the Court should strike the provision entirely. The Court otherwise faces rewriting the Arbitration Provisions entirely, substituting its judgment on a provision-by-provision basis, even where detailed provisions – both specific and contradictory to AAA rules – had already existed.    *Cf. Carideo v. Dell, Inc.*, No. C06-1772JLR, 2009 WL 3485933, at *4 (W.D. Wash. Oct. 26, 2009) (declining to substitute replacement arbitrator where sole designated arbitrator was unavailable); *see also Functional Prod. Trading, S.A. v. I-Grain, LLC*, No. 1:12-CV-0355-JEC-AJB, 2012 WL 13013592, at *14 (N.D. Ga. Mar. 19, 2012), report and recommendation adopted, No. 1:12-CV-355-JEC, 2012 WL 13015081 (N.D. Ga. Aug. 10, 2012) (declining to substitute replacement arbitration rules where designated rules did not exist and could not govern the arbitration); *see also Crossman v. Life Care Ctrs. of Am., Inc.*, Court of Appeals of North Carolina, 225 N.C. App. 1 (Jan 15, 2013**)** ("By requiring the selection of AAA arbitrators, the Agreement sought to employ an organization that refuses to be so employed. This requirement constitutes an integral and material provision of the Agreement. Accordingly, we hold that the Agreement is unenforceable as impossible to perform.").

## C.  <u>Defendants' Defenses To Waiver and Breach Fail</u>

Defendants not only deny that the contract is unenforceable, but also deny that Dunkin' has "waived" its arbitration rights.  Factually, Defendants acknowledge, because they must, that the "AAA decline[d] to administer the arbitration" because "Defendants did not submit a form and pay a AAA fee by a specific date," and that this was "based on a misunderstanding on Defendants' part[.]" Def. Mem. (Doc. 9) at p. 2; *see also id*. at p. 7 (noting "Defendant's misunderstanding"). In Defendants' view, however, these factors are not relevant, and the Court should analyze Defendants' waiver purely through "litigation conduct."  Def. Mem. (Doc. 9) at pp. 7-8.

First Circuit law recognizes, however, that "litigation" is not the only conduct to analyze. *See, e.g.*, *In re Tyco Int'l Ltd. Sec. Litig.*, 422 F.3d 41, 46 (1st Cir. 2005) ("[T]here is no bright-line rule for a waiver of arbitral rights, and each case is to be judged on its particular facts."); *see also Crean v. Morgan Stanley Smith Barney, LLC*, 2023 U.S. Dist. LEXIS 10814, *19-20 (D. Mass. 2023) (recognizing that the First Circuit examines a list of "non-exclusive factors" and waiver may be established through litigation or "other action inconsistent with arbitration").  Most significantly, Defendants' "waiver" cases ignore the single most pertinent fact: that the AAA itself has affirmatively closed the arbitration. *See* §III.D (below). In fact, myriad federal circuit courts have analyzed analogous cases and denied to compel arbitration on three separate grounds: analysis of the FAA text (*see* §III.E below); state law waiver grounds (*see* §III.F below); and material breach of contract (*see* §III.G below).  *See, e.g., Heisman v. Wyndham Vacation Resorts, Inc.*, 2021 WL 1138125, 2021 U.S. Dist. LEXIS 55369 (D.N.J. March 22, 2021) (noting defendant "was not the first defendant to bobble an arbitral forum," and recognizing various courts' analysis per (i) FAA text, (ii) contract waiver, and (iii) material breach, and holding arbitration should not be compelled).

### D.  Per The Text of the FAA the Arbitration Has "Already Been Had"

Federal Courts have repeatedly made clear that the FAA does not authorize a court to compel arbitration where it has already been had.  9 U.S.C. §3 states that the court:

> shall on application … stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Per the terms of the FAA, "the arbitration has been had" and Defendants are "in default."  Courts have ruled that, where 9 U.S.C. §3 does not apply, 9 U.S.C. §4 similarly cannot apply. *Sink v. Aden Enters.*, 352 F.3d 1197, 1201 (9th Cir. 2003) ("We hold that a party to an arbitration agreement

may not compel arbitration of claims under FAA § 4 where a prior default in arbitration of those claims precludes that party from obtaining a stay of litigation pending arbitration under § 3.")

Federal courts have therefore held that they may not compel a party to return to arbitration, even at an initial stage, after the arbitrator has closed the matter for a party's failure to pay arbitration fees. "[P]arties may not avoid resolution of live claims through compelling a new arbitration proceeding after having let the first arbitration proceeding fail." *Noble Capital Fund Mgmt., L,L,C. v. US Capital Glob. Inv. Mgmt., L.L.C.*, 31 F.4th 333, 336 (5th Cir. 2022).

> Following the lead of our sister circuits,[3] we conclude that arbitration 'has been had.' Even though the arbitration did not reach the final merits and was instead terminated because of a party's failure to pay its JAMS fees, the parties still exercised their contractual right to arbitration prior to judicial resolution in accordance with the terms of their agreements.

*Noble Capital*, 31 F.4th at 336. *See also Hammon v. U.S. Fire Insur. Comp. (Delaware)*, No. 4:22-cv-02004, Slip Opinion at *5 (S.D. Tex. Feb. 21, 2023) ("Plaintiff initiated an arbitration with AAA as provided for by the TPA, and AAA terminated that proceeding pursuant to its rules. Pursuant to its rules, AAA also pointed out that, since it had declined to administer the arbitration, 'either party [could] choose to submit its dispute to the appropriate court for resolution.'").

### E. **Dunkin' Has Waived Any Right to Arbitrate Per Massachusetts Law**

Massachusetts law is similarly unforgiving.

Waiver is a "generally applicable contract defense." As such, state rather than federal law should govern as to whether the arbitration clause was waived. *See also* Def. Mem. at §I.A (in

---

[3] As compiled by the *Noble Capital* Court, at fn. 7, the "sister circuit" decisions are: *Tillman v. Tillman*, 825 F.3d 1069, 1072–74 (9th Cir. 2016) (holding that arbitration had been had where arbitration was terminated after the plaintiff was unable to pay her portion of the arbitration fees); *Pre-Paid Legal Servs., Inc. v. Cahill*, 786 F.3d 1287, 1293–94 (10th Cir. 2015) (affirming the lift of a stay of judicial proceedings after a party failed to pay arbitration fees and the arbitration proceedings were terminated by the arbitrator); *and Freeman v. SmartPay Leasing, LLC*, 771 F. App'x 926, 934–35 (11th Cir. 2019) (affirming the lift of a stay of judicial proceedings after the party seeking to enforce the arbitration agreement failed to pay its JAMS filing fees and JAMS terminated the arbitration).

agreement).  Massachusetts state law makes clear that Dunkin's action constitutes waiver.  *Samsill v. Dave & Buster's of Massachusetts, Inc.*, 100 Mass. App. Ct. 1115, 2021 WL 5795481, *2 (Dec. 6, 2021) (unpublished) ("Payment of the arbitration fee to the AAA was an essential prerequisite to arbitration. The judge did not err in ruling that the defendants waived their right to arbitrate.").

Defendants' citation to the Terms' non-waiver provision does not overcome this. Massachusetts state courts have held "the proper approach … is to look at the question of waiver as a question of fact in light of all the circumstances, including the existence of the antiwaiver clause." *M.J.G. Properties, Inc. v. Hurley*, 27 Mass. App. Ct. 250, 252 (1989) (affirming a finder of waiver despite anti-waiver clause).  Massachusetts federal courts have appropriately followed suit and declined to deny waiver upon the existence of an anti-waiver provision.  *See also Zoll Med. Corp. v. Barracuda Networks, Inc.*, 585 F. Supp. 3d 128, 138 (D. Mass. 2022) ("the Court finds the *Hurley* approach more consistent with Massachusetts law, it declines to discount [intervenor's] waiver argument as a matter of law"); *Bachorz v. Miller-Forslund*, 812 F. Supp. 2d 83, 89 (D. Mass. 2011) (holding "[T]here is substantial authority against giving literal and full effect to such clauses; they, too, may be waived.").

### F.  Defendants' Gamesmanship and Repeated Breaches Have Brought Them To Court

Under the FAA and Massachusetts state law, Dunkin's admission of a "mistake" in failing to pay registration fees, coupled with the AAA closing the matter, ends the waiver analysis.

To be clear, however, Dunkin's contention that the parties are in this Court as the result of a single "mistake" is wildly misleading and factually inaccurate.  *Bachorz v. Miller-Forslund*, 812 F. Supp. 2d 83, 88 (D. Mass. 2011), *aff'd*, 703 F.3d 27 (1st Cir. 2012) (noting that "waiver is generally a question of fact" and the issue is suitable for summary judgment only "where the facts material to waiver are undisputed.").  In truth, Dunkin' has displayed a pattern of willful disregard

for the rights of all its customers, including material breaches of the Terms, which preclude the enforcement of the arbitration terms against the putative class, as well as Plaintiff.

Consider: Dunkin' has drafted an arbitration agreement that it reasonably must have known to have unenforceable provisions, under both AAA rules[4] and Massachusetts laws.[5]  Subsequently, Dunkin' customer support[6] and counsel[7] have refused to acknowledge, much less resolve, a significant error in its Mobile App. When faced with a pending arbitration claim, Dunkin' has threatened it might simply moot the claim[8] and declined to respond by AAA deadlines.  Then, even after updating the Mobile App and bringing its arbitration provisions into "compliance" with AAA demands, Dunkin' has failed to provide notice to customers, or seek consent, as to the new Terms.  All the while, the Dunkin' Term's one year statute of limitations continues running with the old Terms in effect[9] and with individuals' Mobile App histories lapsing.

These are not accidents or mistakes; they are legal violations. *See Hershenow v. Enter. Rent-A-Car Co. Of Bos., Inc.*, 445 Mass. 790, 800 (2006) (noting that "The mere existence of statutorily prohibited lease provisions placed all tenants in a worse and untenable position than they would have been had the leases complied with the requirements of Massachusetts law.").

---

[4] Dunkin' Terms materially deviated from AAA consumer rules in the forum selection clause, the commercial rules, and the commercial fees. (Further, the Dunkin' Terms to which consumers are bound dictate that Dunkin' Terms supersede AAA rules in case of conflict.)

[5] Relevant and substantive Term provisions which might conflict with Massachusetts law include limitations of liability of $100 and a one-year statute of limitations. *See* Compl. Exh. 8 at p. 11 ("Disclaimer of Warranty and Limitation of Liability").

[6] Subsequent to filing the Complaint, Plaintiff's counsel has received numerous communications from disaffected Dunkin' customers.  Counsel attaches a single example of correspondence with Dunkin' customer service (where customer was also denied full refund for Mobile Application overcharges in February 2022). Thorn Decl. at Exh. 9.  Discovery will establish that Defendants' repeated effort to place blame upon local franchisees was in bad faith.

[7] *See* Thorn Decl. Exh. 1 (in which Dunkin' counsel places responsibility upon local franchisees).

[8] *See* Thorn Decl. Exh. 6 (in which Plaintiff counsel recounts Dunkin' counsel's comments).

[9] *See* Thorn Decl. Exh. 8 (in which Plaintiff counsel verifies no updates have taken place).

They represent an intentional pattern to deter unsophisticated consumers from bringing any arbitration, much less litigation, and to sweep tens of thousands of pricing violations visited upon many thousands of customers quietly under the rug. *See, e.g.*, Meirav Furth-Matzkin, *On the Unexpected Use of Unenforceable Contract Terms*, J. of Leg. Analysis, Vol. 9, Iss. 1, Spr. 2017, at https://doi.org/10.1093/jla/lax002 (finding consumer tenants "likely to perceive the terms in … agreements as enforceable and binding, and consequently forgo valid legal rights and claims.").

Such gamesmanship is improper. *See, e.g., Stanley v. A Better Way Wholesale Autos, Inc.*, 2018 U.S. Dist. Lexis 137645, *17-18 (D. Conn. Aug. 15, 2018) (denying motion to compel and asserting "[defendant's] failures to respond to the AAA or pay the required fees, followed by its opportunistic reversal after the AAA's decision … smack of 'an intentional pattern of gamesmanship and delay.'"); *Murphy v. Ind. Fin. Co.*, 2020 WL 1452095, * (N.D. Ind. Mar. 25, 2020) (denying motion to compel arbitration and noting "[Defendant] asks to have its cake and eat it too… [Defendant] cannot both breach and enforce the arbitration agreement.").

### G. THE CLASS ALLEGATIONS SHOULD NOT BE STRUCK

Defendants argue, in the alternative, that Plaintiff's class allegations must be struck.

#### 1. *Plaintiff Does Not Allege That Customers Are Bound by the Arbitration Terms*

Defendants' central argument is that Plaintiff has alleged that users "must accept Defendants' Terms of Use before using the Dunkin' Mobile App." Compl. at ¶14. This is true. However, "Accepting" the Terms – quite literally, clicking an "Accept" Button – does not mean that "Therefore all customers who used the Dunkin' Mobile App are bound by the Arbitration Clause and cannot be class members." Def. Motion (Doc. No. 8) at pp. 1-2.

#### 2. *The First Circuit Disfavors Preemptively Striking Class Allegations*

Motions to strike class allegations are disfavored in the First Circuit and only "exceptional circumstances" justify granting those motions prior to the certification phase. *Manning v. Boston*

*Med. Ctr. Corp.*, 725 F.3d 34, 59 (1st Cir. 2013).  "Courts should exercise caution on striking class allegations for two reasons – (1) such 'motions are narrow in scope, disfavored in practice, and not calculated readily to invoke the court's discretion' and (2) the remedy sought 'requires a reviewing court to preemptively terminate the class aspects of … litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to complete the discovery to which they would otherwise be entitled on questions relevant to class certification.'" *Id.*

*3.*  *Massachusetts Law Favors Consumer Class Actions*

Where the FAA does not preempt M.G.L. c. 93A, Massachusetts courts have repeatedly made clear that contractual limitations upon M.G.L. c. 93A class actions are void as against public policy.  *See, e.g., Feeney v. Dell Inc.*, 466 Mass. 1001, 1003 (2013); *Fraga v. Premium Retail Servs.*, 583 F. Supp. 3d 275, 291 (D. Mass. 2022) ("where the FAA does not control, class action waivers are void ab initio as matter of public policy in Massachusetts."); *Waithaka v. Amazon.com, Inc.*, 966 F.3d 10, 27 (1st Cir. 2020) ("if the FAA is inapplicable and [state] law applies as a fallback, [state] law must apply to the interpretation of the dispute resolution section.").

*4.*  *Dunkin's "No Class Action" Waiver Applies Specifically and Only to Class Arbitration*

Defendants reference their "SOF ¶1" for the proposition that "all customers affirmatively agree that they will not participate in a class action, *see* SOF ¶ 1[.]" Defendants' Memo (Doc. 9) at p. 12. But the sole "SOF ¶1" language concerning "participation" is part of a preamble to the Arbitration Clause, beginning with typical introductory language – "PLEASE READ THIS SECTION CAREFULLY" – before providing an overview of terms. In turn, First Circuit law makes clear that a preamble cannot change the basic terms of the contract. *See Fenoglio v. Augat, Inc.*, 50 F. Supp. 2d 46, 57 (D. Mass. 1999), *aff'd*, 254 F.3d 368 (1st Cir. 2001) ("the preamble cannot change the basic terms of the contract."); *Davis v. Dawson, Inc.*, 15 F. Supp.

2d 64, 110–11 (D. Mass. 1998) ("the introductory clause is not materially significant in the sense that it creates a contractual duty.").

In fact, Dunkin' entirely ignores the actual controlling "No Class Action" provision. That is because, despite the slightly misleading and non-binding heading, [10] the "No Class Action" provision is, per its own wording and as drafted by Dunkin', a <u>class</u> <u>arbitration</u> <u>waiver</u>. It appears in the arbitration section, and does not address Court class action proceedings, but instead states:

> Dunkin' Brands and you agree that any Covered Dispute will be submitted to <u>arbitration</u> on an individual basis only. **Neither Dunkin' Brands nor you are entitled to <u>arbitrate</u> any Covered Dispute as a class, representative or private attorney action and the <u>arbitrator(s)</u> will have no authority to proceed on a class, representative or private attorney general basis**.

Underlined emphasis added; bold in original.  Unless the Court rewrites this term, Dunkin's version simply does not touch upon an individual's right to participate in class litigation.[11]

5.    _Defendant's Assertions of "Arbitration Asymmetry" Are Premature_

Defendants argue that Plaintiff cannot represent class interests if he can allege waiver while other putative class members cannot.  This argument of "arbitration asymmetry" however is premature, as is the motion to strike class allegations.[12]  First, Defendants cannot cite First Circuit precedent for "arbitration asymmetry" because none exists.  Second, Plaintiff differs from the N.D. Cal. plaintiff in _GrubHub_ and the N.D. Ill. plaintiff in _Comcast. Corp._  Those plaintiffs had opted out of arbitration agreements. Here Mr. Kelledy has not opted out and already makes class-wide

---

[10] Per the Agreement, "The headings and captions contained herein are for convenience only."  *See* Terms Compl. Exh. 8 ("General Provisions") at p. 21.

[11] Other common waiver clauses might more directly apply.  *See, e.g.*, *Biggs v. Midland Credit Mgmt.*, 2018 WL 1225539, 2018 U.S. Dist. LEXIS 41146, at *21 (E.D.N.Y. Mar. 9, 2018) (waiver stating "You agree not to participate in a class … action against us in court or arbitration.").

[12] Should the Court disagree, Plaintiff respectfully requests this Court allow counsel the opportunity to file a motion to substitute a class representative, as willing putative class members (including those without Mr. Kelledy's specific waiver claims) are known to counsel.

arguments concerning the agreements' unenforceability and Dunkin's material breaches. *See, e.g., Garcia v. Cent. Coast Rests., Inc.*, No. 18-cv-02370-RS, 2022 U.S. Dist. LEXIS 38803, at *13 and 14 (N.D. Cal. Mar. 4, 2022) (noting "significant differences between a plaintiff who opted out of an arbitration agreement and a plaintiff who has successfully challenged an arbitration agreement." and "[Plaintiff's] successful disaffirmation [of the arbitration agreement] based on her minority does not weaken her other, class-wide arguments that remain unresolved. Thus, the concerns present in cases in which a plaintiff opted out of an agreement are not present here.").

Further, discovery regarding the Arbitration Provisions and potential classes is warranted. *See, e.g.*, *Bright v. Brookdale Senior Living*, No. 3:19-cv-00374, 2021 U.S. Dist. LEXIS 250711, at *46 (M.D. Tenn. Mar. 12, 2021) (where certain arbitration agreements existed nonetheless "Defendant has not shown that there is no possibility a class of these new residents could not be maintained" and "the Court finds that certification decision will benefit from further development of the facts, particularly on the arbitration issue."). Finally, Mr. Kelledy's dedication to class interests is clear; he has already declined individual settlement in order to pursue recovery on behalf of the class. *See* Thorn Decl. at Exh. 6; *see also* Emily Villano, *Arbitration Asymmetries in Class Actions*, 131 Yale L.J. 742 (2022) (discussing the prematurity of declining class allegations based on either atypicality or inadequacy of representation, and recognizing the benefits of allowing parties, such as Mr. Kelledy, to litigate the validity of underlying arbitration agreements).

## IV.   **CONCLUSION**

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendants' Motion to Dismiss and Compel Arbitration and their alternative Motion to Strike Class Allegations.

[signature page follows]

20

Respectfully submitted,

Martin Kelledy,

By his attorney,

/s/ *Jeffrey G. Thorn*
Jeffrey G. Thorn (BBO #677222)
Thorn Law PLLC
90 Canal Street, Suite 120
Boston, MA  02114
jgt@thornlawpllc.com
Phone: (617) 835-6681
Fax:    (844) 835-6681

Dated: June 9, 2023

## **CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that paper copies will be sent to all those non-registered participants on June 9, 2023.

/s/ *Jeffrey G. Thorn*
Jeffrey G. Thorn

21